Good morning, and may it please the Court. The no-overtime policy that Consilio adopted in August of 2019 violates Minnesota's overtime laws on its face. After Consilio received a demand from its employee to pay the overtime wages owed to all of the Minnesota employees covered by that policy, the employer refused to pay for 727 days. Finally, in November of 2021, long after this complaint was filed, Consilio made the unilateral decision to pay Bruce Cohen, the plaintiff, as well as all other affected Minnesota employees what it calculated as the overtime wages that had been accrued and were owed at that time. Those are the undisputed facts that are presented to this Court and that were presented to the District Court on Consilio's motion for subjection. Is there a dispute that the amount paid satisfied the alleged nonpayment? With respect to the named plaintiff, Bruce Cohen, there is no dispute that that amount paid was the amount that was owed to date in November of 2021. We don't have the discovery on the putative class members because that has not taken place yet. There's been no certification. So we cannot speak to the other Minnesota employees, but yes, we can confirm that that amount from Mr. Cohen was correct. So your representation is that the parties have stipulated that there have been violations of each one of these Minnesota statutes so that the merits have already been stipulated to? The facts underlying the claim have been stipulated to. There's not been a stipulation by Consilio that its policy was, in fact, unlawful. Merely that it adopted the policy, the policy was challenged, and after this case was filed, it did make payments as were alleged to be What I'm trying to get at is sort of whether we're kind of jumping to damages, right? And as I understand it, the district court never got to the merits of the state claim. So let's say you, we rule in your favor and we say that, yes, there are damages that your client is eligible for under the Minnesota statutes. What would happen as a matter of procedure? Would the district court have to then determine whether on the merits Consilio violated those statutes? Yes, Your Honor. We do still need a determination, and I think Mr. Cohen's entitled to a determination of whether that policy and the other actions that are challenged here did, in fact, violate Minnesota law, and that is sort of a product of not really a typical procedural posture that this case comes before the court. It seems a little odd that we, it doesn't seem like a final order from, I mean, I know there's a judgment, I understand that, but you're at, the parties are asking us to sort of answer a question about damages before there's ever been any liability on the merits of the claims, and I'm, as I understand it's before us now, but I'm a little puzzled on how that's permissible. I think the confusion is understandable, Your Honor. The, sort of the framework that the parties stipulated to and the court agreed to, which is included in the appendix, was that once the national federal claim, in this case the FLSA claim, was resolved, and that was resolved through an approved settlement agreement, that Concilio intended to file an early summary judgment motion before discovery is closed, before class certification, on its defense against, and specifically the stipulation was as to count seven, which was the, what we call the daily wage penalty claim. That stipulation was effectively, Concilio believed that with these sort of ten paragraphs of facts, it had everything it needed to affirmatively prove it was entitled to dismissal of that claim, and so the parties agreed that the court could hear that defense. In those stipulations, the plaintiff reserved the right, after discovery is closed, to then file his own dispositive motions, and that's when we would address the actual merits of the claims. So, I do think when you read the judgment, the court sort of skips over, really, the merits, the underlying claims themselves, and just gets to damages, and I think in most of the cases, or most of the claims that were presented, that was wholly improper, because we are entitled to a ruling on the merits of those claims. With my time this morning, I'd like to address the count seven of the complaint, which we refer to as the daily wage penalty, and then, separately, the remaining state law claims, which, as I've been discussing already, the district court dismissed without addressing the merits, or really any relevant facts, on what appears to be a finding that those claims were moot. So with the first issue, the daily wage penalties, as we call them, the court is asked to decide, as a matter of first impression, whether an employee has a private right of action to recover statutory penalties under the Minnesota Payment of Wages Act. And I'm sorry to interrupt you so early in that argument, but when you say private right of action, just so I understand what your argument is, are you really just simply talking about the damages that are available to your client upon a meritorious claim, or are you talking about a separate right of action for separate damages? If you understand the question, sort of, I understand you get compensatory if there's a meritorious claim. My understanding, then, is the question is, do you also get statutory damages? Is that what you're calling a private right of action? So I think it's important to kind of divide out the claims that are before the court. The claim that I'm focusing on arises under the Payment of Wages Act. That's Minnesota Statute 181.101, as well as 181.171, which refers to the individual employee's right to sue for damages, as well as civil penalties under various sections of that statute. We also have, standing beside those, the claim for overtime itself under the Minnesota Fair Labor Standards Act, as well as a Minnesota Wage Theft Act claim for failure to give notice. Those claims, and specifically the overtime claim, is where the unpaid wages and liquidated damages arise. The Payment of Wages Act, 181.101 and 181.171, really is a penalty based on the failure to pay wages that are owed after a demand is made. And so that arises under a separate, they're sister statutes, but it arises separately from the actual owed wages and any damages under the MFLSA. That's what you're calling the private right of action, after the demand is made by either the commissioner. Yes. And I think the district court did kind of combine those two questions of, is it a standalone claim or is it just damages? And they said, effectively, an individual employee can sue for wages that are owed, but as the district court interpreted that statute, the employee cannot sue for the specific penalties set out in 181.101. So that claim really does come down to, can that individual recover those types of damages? Well, there's a question whether they could sue or whether they could receive them. The claimant could sue for those penalties or that those penalties are owed, but couldn't receive them. They'd actually go to the state. So there's no dispute on this, on 181.101. That section explicitly states that any penalties under that section are payable to the individual employee. And Concilio doesn't contest that that's a penalty that goes to the state. There are some other civil penalties arising under the MFLSA, which go to the state, but can still be sued for by an individual. So on this claim, yes, the question really is, can the individual sue for the claims, not can the individual recover them eventually? What that boils down to is whether Section 181.171 under the MPWA encompasses this daily average earning penalty or the daily wage penalty, as we call it, under 181.101. We submit that by reading those two sections together and following the Minnesota Supreme Court's guidance, the only reasonable conclusion is that 181.171 does grant an employee the right to sue for and recover those daily penalties. In interpreting this state law, the court is asked to determine what the state Supreme Court would most likely hold if it were facing this question of interpretation. Here the Minnesota Supreme Court's guidance in Milner, we believe, is crystal clear. Milner talks about how the MPWA and the MFLSA are sister statutes that create this comprehensive remedial scheme, and so they must be read together and in light of each other. In Milner, the focus was on whether an individual bringing a claim under the MFLSA could sue to recover civil penalties under that statute. In that case, as we have here, it involved two relevant provisions in the statute. First, a statutory provision establishing a penalty and referring to the Commissioner of Labor and Industry, and second, a section expressly granting an individual, an employee, or an aggrieved person the right to sue and to recover the civil penalties under that earlier section. Milner looked at 177.27 of the MFLSA, and it looked at specifically subdivision 7 and 8 of that provision. 7 creates a penalty and refers to the Commissioner's ability to issue an order to comply if that section has been violated, and if an order to comply is issued, the Commissioner can then issue civil penalties up to $10,000 per violation. Subdivision 8, which follows that, creates, as Milner Court explained, creates the right of the employee to sue for all penalties identified in that earlier section. And so that exact same logic, we believe, applies here to the Payment of Wages Act. 181.101 creates a civil penalty and refers to the Commissioner's ability to assess that  181.171, later in the same statute, expressly states that an aggrieved person or an employee may sue to recover the civil penalties identified in that section. Is the language in the two, is it identical or is it different? Between the MPWA and the MFLSA? Yes. It's very similar. Specifically 177.27 subdivision 8, which creates the private right of action, I believe it says, an employee shall have the right to bring a claim in the district court. And 181.171 uses very similar language. Most importantly here, they both refer to the civil penalties. What is the language? So 181.171 subdivision 1 states, quote, a person may bring a civil action seeking redress for violations of, and it lists several sections including 181.101. And then that same section says, quote, an employer who is found to have violated the above sections is liable to the aggrieved party for the civil penalties or damages provided in the section provided. And that really does mirror the language in 177.27 subdivision 8. I see I'm getting into my rebuttal time, so unless there are any specific questions, I would reserve the remainder of my time for rebuttal. Thank you, Kevin. Thank you. Mr. Lasseter. Good morning. May it please the court. Excuse me, I'm just getting over the flu, so my voice is a little shaky. My name is John Lasseter. I'm here on behalf of the appellees in this case. And I think, Judge Kobes, your last question proffered to my opposing counsel was a very prescient one. I would submit to the court that the language, there is a significant difference between Minnesota statute 177.27 subdivision 8 and Minnesota statute 181.171. 181.171 does include the language that an employer who is found to have violated the above sections, which does include 101, the statute at issue here, is liable to the aggrieved party for the civil penalties or damages provided for in the section violated. So it specifically references the civil penalties or damages provided in section 101. Minnesota statute 177.27 subdivision 8 does not contain that limiting language. What it says is that a party, an employee may bring a civil action seeking redress for violation of the MFLSA provisions at issue in this case directly to the district court. It does not say that the employee is limited in any way similar to what 181.171 states. And that is significant here because when you look at Minnesota statute 181.101, the provision that allows the commissioner of the Department of Labor and Industry in Minnesota to seek a daily average earnings penalty, that same section, 101, limits an employee to seeking or prosecuting a claim for wages. It does not say that the employee can also seek the penalty that is specified for the commissioner alone. That also makes sense when you look at other provisions of the Minnesota Payment of Wages Act that specifically authorize employees to seek a daily average earnings penalty under different circumstances. So for example, Minnesota statute 181.13 applies to employees who have been terminated. And it says that an employee is authorized to make a written demand for unpaid wages and that an employee may claim and collect a 15-day average daily earnings penalty if they are not paid those wages within 24 hours. That's a significant difference because Minnesota statute 181.13 very clearly authorizes an employee to seek those damages, to seek those penalties. Counsel, would you address Judge Kelly's concern about the cart first appearance of this case and the issues that we're now arguing about applicability of damage provisions in the absence of a judgment? Yes, I would submit that this is not prematurely before the court and the issue really is whether or not there is a private right of action to the specific relief being sought. So it is a damages issue. The question is whether or not the employee can even seek it at all. And under 101, the specific provision I've been talking about, the employee very clearly can seek unpaid wages. He can prosecute a claim for wages, but he does not have a private right of action to seek the average daily earnings penalty sought. So there's no reason for the district court to reach that issue, to decide that issue because it's not available to the employee. Would they have to find the merits of the claim though? You've kind of sort of forked off the two types of damages, the compensatory, then these penalties. Are they both attached to the same merits finding by a district court? Yes, they would be. But here the court has already concluded based on our stipulation that Mr. Cohen, the appellant in this case, has been fully compensated for all of his unpaid wages. He does not dispute that. But does whether you're compensated answer the question of whether there's an underlying violation? It does in the sense that the Minnesota Payment of Wages Act is primarily about whether or not wages have been paid. And when the claim is made that the wages haven't been paid and that claim is satisfied, there is no longer live dispute under that statute. So there are no merits any longer to be ruled upon by the court other than that the wages have been paid. So why haven't the parties just settled the damages? If you all have agreed on the facts as to what has occurred and why hasn't there just Why hadn't this gone the way of working out the payments instead of trying to work through these difficult legal issues? You know, the parties spent a significant amount of time trying to resolve this case and we were able to resolve the federal claim. But what we weren't, the major roadblock here was this dispute over the availability of the daily average earnings penalty in particular under 101 and the value of that claim. And as the record reflects, Mr. Cohen asserts on his own behalf that his alleged unpaid wages were roughly $3,300 and he was paid that plus liquidated damages under the MFLSA of roughly $400. He's now alleging he's owed, in the aggregate, over $250,000 in additional penalties and in just under the section 101, $172,000. It's 53 times the amount in dispute in terms of unpaid wages. So that was the roadblock. And it seems very clear to us, based on a plain reading of section 101, that those penalties are not even available to him. So we were not able to overcome that dispute and that's why we're here before you today. So if we were to rule in Mr. Cohen's favor, what do you think would happen at the district court upon remand? Would you just be paying the penalties? It does, at least as it relates to section 101, I believe that we would be, that there are no longer, at least with respect to Mr. Cohen, there is no longer a dispute he's been paid all of his wages. So yes, as it relates to Mr. Cohen, it would be simply a matter of calculating the daily average earnings penalty, which we would then assert if it goes back to the court and those are imposed because there's a finding there is a private right of action to seek those. We've also raised the constitutional arguments here before the court that those are disproportionate. So it may be, so you disagree that there have to be any kind of merits determination at the district court on remand. It's just, it would be a matter of, all right, let's get out the calculator and figure out what you're owed. In particular, as it relates to the 101 damage. Putting aside your constitutional argument, when you say particularly, is there anything else that the district court would have to be doing as a merits-based assessment other than the calculation of these damages if Mr. Cohen were to be successful? As it relates to the Minnesota Wage Theft Act claim, I do believe there would be some more merits determinations as to whether or not my client has specifically violated that statute. It's a notice provision. So there would be discovery on that, I assume, and there would need to be a merits determination on that. But there is no dispute that the wages were paid and we have not asserted certain defenses that would allow us to avoid a merits determination in this case. So as it relates to the 101 penalties, it would just be a penalties calculation. And as it relates to the MFLSA penalties, the real dispute there is those are payable to the state. They're not available to Mr. Cohen. So at this point, he has nothing left to pursue on his own behalf. But then it would just be a determination by the court as to whether or not those penalties are owed under the MFLSA. To the commissioner? To the commissioner, to the state. Yes, that's correct. And then there's still fact disputes on the theft of wages? Yes, those are not resolved. That's correct. So, with respect to, just briefly with respect to Section 101, again, the clear language of that statute applies here and it does prohibit Mr. Cohen from seeking on his own behalf or on behalf of a class the daily average earnings penalty sought. The cases that the district court relied on as persuasive, the MyPillow case and the whole v. Converge 1 case, were both decided by district courts in 2021 and 2023. Both of those courts, both of those decisions held that 101 does unambiguously limit enforcement of the 101 penalties to the commissioner. Now, the district court did not rely on those as binding precedent or authority, but they did appropriately look to those cases as persuasive authority. And we would submit that those cases, along with the district court's decision, were rightly decided based on the language of 101. The Milner case and the other cases cited by plaintiff to, or excuse me, appellant to support their argument that there is an avenue to the 101 penalties, all relate to other provisions of the Minnesota Payment Wages Act. So for example, the Milner case, Milner never actually reached the issue of whether their penalties were available to employees under 101. The issue at Milner was, are the penalties under 101, really the penalties under 177.27 payable to the state or not? And what Milner found is, 101 says the penalties are payable to the employee. Milner never reached the issue of whether or not the 101 penalties could be sought by the employee. What Milner recognized is that the commissioner could seek those penalties, and if they were obtained, were payable to employee, and under 177, the penalties were payable to the state. So the Milner case is really inapplicable to the issue before the court today. The court . . . Has there been any involvement by the state in the facts of this case?  There's no evidence of that, and I am frankly, outside the purview of the record in the case, I'm not aware of any state action as it relates to this case. So the commissioner has not been involved, no representative of the commissioner has been involved, and that very plainly means that the 101 penalties are not in play here. Is it too late for them to do that? Is there a timeframe? Well, yes. In this case, it would be too late for them to do that. They would have to start their own investigation. It's certainly too late in the sense that there are no wages to be demanded anymore, at least on behalf of the appellant, and that's what matters for the purpose of today. The Department of Labor and Industry could not make a demand for wages that would pertain to this case at all. The other thing I'd like to point out is there are three separate buckets of penalties here at issue. The Minnesota Wage Theft Act penalties under 181032, there's no private right of action to seek those penalties under Minnesota Statute 177.27, Subdivision 8. That Subdivision 8 limits an employee's ability to seeking the penalties under the MFLSA, and the Minnesota Wage Theft Act is not part of the MFLSA. It's a separate statute, so that's not permitted. I do want to briefly address the injunctive relief ruling from the district court. We would submit that the district court got that right, and that the injunctive relief sought in the complaint here was simply a stop disobeying the law injunctive relief. It's been recast as get rid of your unlawful policy. There's no evidence in the record that that unlawful policy is continuing, and in fact Mr. Cohen has admitted that he has been made whole as it relates to the alleged unlawful policy. There's nothing to be enjoined, but nonetheless, even with that recasting, it's still a request for an injunction that says don't disobey the law, and that's not permitted as the case law we have cited indicates. I would also submit to the court that with respect to the claim for additional attorney fees, that part of the attorney fees in this case were resolved as it relates to the Fair Labor Standards Act claim, and there is no evidence in front of the district court of any additional fees that would be owed here. The submission of fees to the district court all related to the Fair Labor Standards Act claim, and the fees generated as it related specifically to those claims, there is no evidence in front of the court or in the record of additional claims for fees. And as it relates to pre-judgment interest, that could be owed if there were a judgment here in the appellant's favor, but there is not. There was no judgment reached. In fact, the judgment here was in my client's, the appellee's favor. I have covered everything I wanted to cover with the court. If you have any additional questions for me, I'm happy to answer them. Thank you. Thank you. I do think there are a couple of important things that need to be clarified in terms of what's before the court. The court has heard a lot of argument about the average daily earnings or the daily wage penalty under 181.101, and that is really a heavy focus in the briefing. But that's not the only claim that was dismissed by this district court. The district court also threw out the claim for violations of the overtime law as well as the wage theft claims. We heard Counsel for Concilio state that Mr. Cohen was fully compensated and therefore there's no live controversy, which clearly they're arguing that those claims are now  There are still substantial and meaningful remedies available on those claims, notwithstanding Concilio's decision to unilaterally pay out what it calculated as having been owed under those claims. With respect to the Fair Labor Standards, the MFLSA claim, we are entitled to a determination of whether that policy is in fact unlawful. Standing here today, Concilio has still not admitted that that policy is illegal, and the summary judgment record before the district court has no indication that that policy has been withdrawn. All we have is the payment that was unilaterally made. In addition, the injunctive relief that's requested, both the MFLSA and the MPWA expressly state that injunctive relief may be granted to a prevailing employee or plaintiff under those claims. Here, the injunctive relief is specific to the violations that are shown. Again, talking about whether the injunction that would ultimately be issued is a mere obey-the-law injunction is putting the cart before the horse, because that's going to depend on what the actual violations shown on the merits of the claims are. If, as we contend, the policy itself violates the MFLSA, then Mr. Cohen would be entitled to an injunction to dissolve or rescind that illegal policy and return to a policy that was in place before that complied with Minnesota state law. In terms of the other remedies, attorney's fees have only been paid in this case with respect to the federal claim. That was part of a settlement of that claim. Both the MFLSA and the MPWA are fee-shifting statutes. They provide a prevailing plaintiff the right to an award of reasonable attorney's fees. That would be calculated upon entry of judgment and a decision on the merits, and the same goes for pre-judgment interest. So, for these reasons, we would ask that this Court reverse the District Court's grant of summary judgment. Thank you. Thank you, counsel. Court thanks both counsel for your participation and argument before us this morning. It's been helpful. It's still a difficult matter to work through, but we'll do our best with it. Thank you. Thank you.